**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PREM BARAL,

Plaintiff,

v.

INTRA-NATIONAL HOME CARE, LLC, DILLI ADHIKARI, and MEG SUBEDI,

Defendants.

Civil Action No. 1:20-cv-1195-SES

ELECTRONICALLY FILED

**Jury Trial Demanded**

# AMENDED COMPLAINT

AND NOW, this 5th of October, 2020, comes the Plaintiff Prem Baral, by and through his undersigned attorney, and brings this Amended Complaint[1] against Defendant Intra-National Home Care, LLC, Dilli Adhikari, and Meg Subedi (collectively "Defendants"), and in support thereof avers as follows:

## Parties

1. Plaintiff Prem Baral ("Plaintiff" or "Baral") is an adult individual domiciled at 1348 Jasmine Lane, Lancaster, PA 17603.

2. Defendant Intra-National Home Care, LLC ("INHC") is a for-profit, limited liability company registered under the laws of the state of Michigan. INHC's local registered

[1] Plaintiff filed his original Complaint with this Court on July 13, 2020. ECF 1. Defendants filed their collective Answer, Affirmative Defenses, and Counterclaims against Plaintiff on September 14, 2020. ECF 5. Plaintiff now files this Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Plaintiff has also filed his Answer and Affirmative Defenses to Defendants' Counterclaims pursuant to Federal Rule of Civil Procedure 7(a)(3) in a separate ECF filing.

business address is 1620 Skyline Dr., Apt. 18, Pittsburgh, PA 15227. INHC's Harrisburg office is located at 801 East Park Drive, Suite 101, Harrisburg, PA 17111.

3. Defendant Meg Subedi resides in Pittsburgh, Pennsylvania and Defendant Dilli Adhikari resides in Columbus, Ohio. Defendants Adhikari and Subedi are collectively referred to as "Individual Defendants."

**Jurisdiction and Venue**

4. Plaintiff's claims arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). This Court has subject matter jurisdiction over Plaintiff's FLSA action pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b), because substantially all of the events or omissions giving rise to this claim occurred within this judicial district.

**Factual Background**

6. INHC provides non-medical, in-home care services to "consumers" in Pennsylvania and Michigan. INHC's corporate office located in Columbus, Ohio.

7. INHC employs Direct Care Workers, who act as caregivers for individuals in these states who are homebound due to illness, disability, or old age.

8. These Direct Care Workers engage in interstate commerce by providing services to individuals within one state while under the employment of, and while being compensated by, entities from other states.

9. Baral worked for INHC in multiple positions between April 2018 and May 2020.

**A. Plaintiff's employment as a Direct Care Worker for Defendant Intra-National Home Care, LLC**

10. Baral was employed as a Direct Care Worker for INHC between January 2018 and February 2020.

11. While Baral worked on-site between April 2018 and July 2018, he received orders and was supervised by employees from the Defendant IRHC's Lancaster, Pennsylvania office.

12. Direct Care Workers like Baral provide companionship and personal care services to individual consumers. In certain situations, INHC is able to hire their consumer's family members to act as Direct Care Workers.

13. Between February 2018 and February 2020, Baral worked for INHC by providing direct care services to his mother and other consumers.

14. INHC is reimbursed by Medicare and/or Medicaid for the companionship and home health services provided by their Direct Care Workers.

15. Defendant INHC is an "employer" and Baral was its "employee" as those terms are defined in the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 203(d) and (e)(1); the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.2a; and, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.103(g).

16. During this period, the Individual Defendants were each owners and/or managers of INHC and were each responsible for INHC's policies and procedures with respect to compensation of Direct Care Workers.

17. The Individual Defendants were "employers" as that term is defined in the FLSA. 29 U.S.C. § 203(d) ("'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee. . .").

18. The Individual Defendants were "employers" as that term is defined by the PMWA. 43 Pa. Cons.Stat. § 333.103 ("employer" defined as "any **individual** . . . or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e].") (emphasis added).

19. The Individual Defendants were "employers" as that term is defined in the WPCL. 43 P.S. 260.2a ("employer" defined to include "**every person** . . . and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." ) (emphasis added).

20. While Baral worked as a Direct Care Worker, he was an hourly employee and was paid every two weeks.

21. Baral's paychecks indicated that he regularly worked in excess of 40 hours a week.

22. Baral's paychecks indicate that, on a biweekly basis, he worked between 168 and 184 hours each pay period—or 84-92 hours per week—and was paid on an hourly basis.

23. Defendants never paid Baral an overtime premium for work performed between April 9, 2018 and July 15, 2018 in excess of 40 hours per week.

24. Specifically, Baral was never paid overtime for the following pay periods[2]:

| **Period Ending** | **Hours Worked** | **Overtime Hours** |
|---|---|---|
| 4/22/2018 | 168 | 88 |
| 5/6/2018 | 168 | 88 |
| 5/20/2018 | 168 | 88 |
| 6/3/2018 | 168 | 88 |
| 6/17/2018 | 168 | 88 |
| 7/1/2018 | 168 | 88 |
| 7/15/2018 | 184 | 104 |

25. Upon information and belief, INHC sought reimbursement from Medicare and/or Medicaid for every hour paid to Baral.

26. Defendants never indicated that Baral was exempt from overtime protections under either the FLSA or the Pennsylvania Minimum Wage Act.

27. Defendants never provided Baral notice of his right to overtime payments in accordance with the FLSA and/or the regulations enacted thereunder. 29 C.F.R. § 516.4.

28. Baral was never in an employment relationship with his mother, the individual he provided home health care services to during the months identified above.

29. During this period, Baral was employed *solely* by INHC, its agents, and its officers.

[2] This data was derived from Baral's pay stubs. This chart reflects the unpaid overtime hours that Plaintiff is able to point to with the evidence available to him at this time, and it is by no means an exhaustive or final calculation of Plaintiff's claimed damages.

30. Defendants are, collectively, a “Third Party Employer,” as that term is used in regulations implementing the FLSA and Pennsylvania wage protection statutes. 29 C.F.R. § 552.109; 43 PA. STAT. § 333.105(a)(2).

**B. Plaintiff’s employment as a recruiter for Defendant Intra-National Home Care, LLC**

31. In addition to working as a Direct Care Worker, Baral regularly recruited new consumers for Defendants’ business.

32. Around June 2017, when Baral first started working for INHC, Baral discussed working in an administrative capacity and recruiting new consumers for the company with Defendant Meg Subedi.

33. In those discussions, Defendant Subedi offered to pay Baral a commission on each new consumer he recruited on behalf of the company. Defendant Subedi indicated that Baral would be entitled to a $600 commission each month for every consumer he recruited to the company.

34. Baral personally recruited over 15 consumers to INHC over the first few months of his employment.

35. Around August 2017, Baral asked Defendant Subedi and Area Manager Ryan Dhimal about his commission payments for the consumers he brought to the company.

36. Defendant Subedi told Baral he would have to wait until the second quarter of 2018 to receive his commission payment and then threatened to fire Baral if he refused to accept this delay in his commission payments.

37. By June 2018, Baral personally recruited around 30 consumers to Defendants’ business.

38. Baral never received commission payments for the consumers he recruited to INHC.

39. In July 2018, Baral met again with Defendant Subedi in Pittsburgh, Pennsylvania and asked about his overdue commissions.

40. During that conversation, Defendant Subedi offered Baral a new deal in lieu of his overdue commissions.

41. Subedi promised to pay Baral 70% of the profit realized from INHC's Lancaster, Pennsylvania location on a quarterly basis ("Profit-Sharing Agreement") in lieu of the agreed-upon commission payments and in exchange for Baral's continued work recruiting and maintaining the business's consumer base.

42. Once again, Defendant Subedi threatened to fire Baral without any further payment if he refused to accept this new offer.

43. During this meeting, Baral requested that Subedi provide a written agreement memorializing the terms of the Profit-Sharing Agreement.

44. Defendant Subedi never provided Baral a copy of the Profit-Sharing Agreement, despite numerous requests from Baral after their meeting.

45. On November 11, 2018, Defendant Subedi emailed Baral a Profit and Loss statement for INHC's Lancaster, Pennsylvania office indicating that the location realized a profit of $16,082.83 between August 1, 2018 and October 31, 2018.

46. On or about November 21, 2018, Defendant Subedi sent a check to Baral for $11,706.03, roughly 70% of the $16,082.83 profit detailed in the Lancaster profit and loss statement. The memorandum line of Subedi's check indicates: "Share 3 month Aug 1st to Oct 30th."

47. In February, 2019, Baral asked Subedi for the profit and loss report on the Lancaster office for the preceding quarter (November 1, 2018 to January 31, 2019).

48. Subedi refused to provide the quarterly report and told Baral he would have to wait until April 2019 to review it with him.

49. Once again, Subedi threatened to terminate Baral if he did not wait for the report and payment due to him under the Profit-Sharing Agreement.

50. On May 23, 2019, Subedi called Baral and told him that he would meet with Baral in the Lancaster office on the following day to review the profit and loss statement and deliver Baral's portion of the Lancaster profit for the first quarter.

51. On May 24, 2019, Baral met with Subedi, Krish Subedi, and Tara Gurung in the INHC Lancaster office.

52. During that meeting, Subedi said that Baral would not receive his payments under the Profit-Sharing Agreement unless he signed a Non-Compete Agreement with INHC.

53. Baral asked for payment due to him under the Profit-Sharing Agreement for the preceding seven months (from November 1, 2018 through May 24, 2019), but Subedi said he would not pay anything until Baral signed the Non-Compete Agreement with the company and threatened to fire him.

54. At 7:00 PM that evening, Subedi brought Baral to a notary's office and presented him, for the first time, with a Non-Compete Agreement and an edited Profit-Sharing Agreement. A true and correct copy of the Non-Compete Agreement is included with this Complaint as Exhibit A.

55. The Non-Compete Agreement does not expressly detail any specific consideration offered by INHC. Instead, by the terms of the Non-Compete Agreement, Baral agreed to its

restrictions "in exchange for appreciation and raise salary [sic] by the Company [INHC]." Exhibit A, 1.

56. It is unstated whether the Non-Compete Agreement relates to the terms and conditions of Plaintiff's employment with Defendant INHC as a Direct Care Worker, recruiter, or both.

57. Subedi gave Baral little-to-no time to review the agreements.

58. Once again, Subedi told Baral that he would be fired very next day and that he would not receive any funds due to him under the Profit-Sharing Agreement if he refused to sign the documents in front of the notary.

59. Baral signed both agreements.

60. Baral requested a copy of the signed agreements from Subedi, but Subedi refused to provide him a copy.

61. For several more months, Defendants provided no additional compensation to Baral under the Profit-Sharing Agreement or the terms of the Non-Compete Agreement.

62. Starting in September 2019, Baral began receiving sporadic, irregular payments from INHC without any documentation regarding the nature of these payments or how these payments were calculated.

63. Subedi told Baral that these payments were being made to him on a 1099 basis.

64. Baral has never entered into an agreement with Subedi or Defendant INHC as an Independent Contractor, nor was he ever asked to submit a completed W-9 to his employer.

65. Again, without explanation, INHC began paying Baral a bi-weekly salary for his work as a recruiter and administrator on or about March 6, 2020.

66. INHC made nine regular payments of $13,000 to Baral between March 6, 2020 and June 17, 2020.

67. INHC's salary payments did not correspond in any way to the Profit-Sharing Agreement reached between the parties.

**COUNT I—FLSA OVERTIME VIOLATION**
**29 U.S.C. § 201, *et seq.***
**(All Defendants)**

68. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

69. At all times material herein, Baral was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, et seq.

70. The FLSA regulates, among other things, that employers pay overtime to employees who are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

71. Defendants are subject to the overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce with customers in several states and their employees are engaged in commerce.

72. Defendants violated the FLSA by failing to pay for overtime. In the course of perpetrating these unlawful practices, Defendants failed to keep accurate records of all hours worked by its employees.

73. Baral is not a member of any class or category of employees exempt from overtime requirements in either the FLSA or the regulations promulgated thereunder. *See* 29 U.S.C. § 213.

74. Baral is entitled to damages incurred within the three-year period preceding the filing of his Complaint, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was prohibited by the FLSA.

75. As a result of Defendants' unlawful acts, Baral has been deprived of overtime compensation and other wages in amounts to be determined at trial, and Baral is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT II—PENNSYLVANIA MINIMUM WAGE ACT**
**OVERTIME VIOLATION**
**43 P.S. § 333, *et seq.***
**(All Defendants)**

76. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

77. Pursuant to 43 P.S. § 260.3(a), Defendants are required to pay Baral overtime wages for his hours worked in excess of 40 hours per week.

78. For several months, Defendants failed to pay Baral the state required time-and-a-half hourly wage for the time he worked over 40 hours per week.

79. Baral is not a member of any class or category of employees exempt from overtime requirements in either the PMWA or the regulations promulgated thereunder.

80. Defendants failed to properly compensate Baral for at least 14 weeks of work performed between April 2018 and July 2018.

81. Baral is entitled to damages incurred within the three-year period preceding the filing of his Complaint.

82. Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was prohibited by the PMWA.

83. As a result of Defendants' unlawful acts, Baral has been deprived of overtime compensation and other wages in amounts to be determined at trial, and Baral is entitled to recovery of such amounts, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 43 P.S. § 333.113.

**COUNT III—PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**
**UNPAID WAGES**
**43 P.S. § 260.9a**
**(All Defendants)**

84. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

85. Baral was an "employee" and Defendants were his "employer" as those terms are defined in the Pennsylvania WPCL. 43 P.S. § 260.2a.

86. The Pennsylvania WPCL allows employees to bring a private civil action to recover unpaid wages and liquidated damages. 43 P.S. § 260.9a.

87. Overtime wages are wages which must be paid and are recoverable under the WPCL. 43 P.S. § 260.3.

88. Defendants denied Baral overtime payments for over four months.

89. Defendants' violations of the Pennsylvania WPCL were willful and knowing.

90. As a result of Defendants' unlawful acts, Baral has been deprived of overtime compensation and other wages in amounts to be determined at trial, and Baral is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 43 P.S. § 260.9a.

**COUNT IV—BREACH OF CONTRACT**
**(Baral v. Intra-National Home Care, LLC)**

91. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

92. INHC and Plaintiff originally agreed that Plaintiff would receive a commission payment for each consumer who he brought to INHC.

93. After months without payment, in July 2018 Defendant Subedi offered Baral a Profit-Sharing Agreement, to be reduced to writing, in lieu of any outstanding payments due under their original commission agreement.

94. Subedi promised to pay Baral 70% of the profit realized from INHC's Lancaster, Pennsylvania location on a quarterly basis.

95. INHC made a single payment under the Profit-Sharing Agreement on or about November 21, 2018.

96. Despite numerous requests, INHC refused to make further payments to Baral under this arrangement despite INHC's Lancaster, Pennsylvania office operating profitably during this period.

97. With the exception of INHC's payments to Baral for his employment as a Direct Care Worker, after November 2018 INHC's payments made for Baral's additional work for the company never included any type of explanation or justification for the amounts being offered. Often, these payments were made without required payroll tax deductions.

98. INHC breached its obligations when it refused to pay Baral in accordance with the terms of the Profit-Sharing Agreement for over a year between November 2018 and Baral's resignation in June 2020.

## Request for Relief

WHEREFORE, Plaintiff demands judgement against Defendants and damages in an amount to be determined at trial, as follows:

a. That Plaintiff be awarded actual and consequential damages to make Plaintiff whole, including back pay with prejudgment interest, front pay, and compensation for lost benefits, in an amount to be proven at trial, and other affirmative relief necessary to eradicate the effects of Plaintiff's damages associated with Defendants' failure to pay overtime and Defendants' failure to pay Plaintiff under the Profit-Sharing Agreement;

b. That Plaintiff be awarded liquidated damages in accordance with 29 U.S.C. § 216(b) and/or 43 P.S. § 260.10;

c. That Plaintiff be awarded the costs of this litigation, including reasonable attorney's fees and costs, pursuant to 29 U.S.C.A. § 216(b), 43 P.S. § 333.113, and/or 43 P.S. § 260.9a; and

d. That Plaintiff be awarded such further relief as deemed to be just and proper.

## Demand for Jury Trial

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Date: October 5, 2020

Respectfully Submitted,

*/s/ Marcus B. Schneider*
Marcus B. Schneider, Esquire
PA I.D. No. 208421
STEELE SCHNEIDER
420 Ft. Duquesne Blvd, Suite 500
Pittsburgh, PA 15222
(412) 235-7682
(412) 235-7693/facsimile

marcschneider@steeleschneider.com

Attorney for Plaintiff Prem Baral