**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PREM BARAL, | : | Civil No. 1:20-CV-01195 |
| Plaintiff, | : | |
| v. | : | |
| INTRA-NATIONAL HOME CARE, LLC, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is Plaintiff Prem Baral's ("Baral") expedited motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(b). (Doc. 56.) The court finds that there was no new and valuable consideration for the non-compete agreement and it is therefore unenforceable. For this reason, the motion will be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In considering Baral's motion for partial summary judgment, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and drew all reasonable inferences therefrom in the light most favorable to Defendants, as the nonmoving parties, in accordance with the relevant standard for deciding a motion for summary judgment. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

Baral was previously employed by INHC. Dilli Adhikari, owner and CEO of INHC, and Meg Subedi, Chief Financial Officer of INHC, participated in the creation of policies and procedures for INHC's compensation. (Doc. 24, ¶ 16.) Baral was employed in more than one position with INHC. (Doc. 58, ¶ 2.) In January of 2018, Baral began working as a Direct Care Worker, which was an hourly position with payment provided every two weeks. (*Id.* ¶¶ 3, 6.) All of Baral's Direct Care Worker paystubs, with the exception of his last one, show that he worked between 32 and 144 hours of overtime per pay period at varying hourly rates. (*See* Doc. 58-2.)

Approximately a year and a half into his employment with INHC, Baral signed a non-compete agreement ("NCA"). The NCA provides that the signer enters into the agreement "in exchange for appreciation and raise salary by [INHC] and [INHC's] disclosure of its Confidential Information; being permitted access to confidential Third Party Information; and other valuable consideration, which [the signer] acknowledge[s] the receipt and sufficiency of and would not have otherwise been entitled." (Doc. 23-1, p. 1.)[1]

At some point during his employment with INHC, Baral also began working as a Case/Marketing Manager, though the parties dispute when this change took place. (Doc. 58, ¶¶ 8, 13; Doc. 60, ¶¶ 8, 13.) It is unclear what the basis for

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

compensation was for this position. The parties agree, however, that Baral received a single bonus payment for work he performed as a Case/Marketing Manager in November of 2018. (Doc. 58, ¶ 12; Doc. 60, ¶ 12.) Baral's wages for this position were inconsistent until approximately January 2020, when he began receiving paychecks showing a gross pay of $13,000 for each pay period. (*See* Doc. 58-3.)

On July 13, 2020, Baral initiated this action by filing a complaint. (Doc. 1.) Defendants answered the complaint and lodged counterclaims against Baral, one of which related to a purported violation of the NCA between the parties. (Doc. 5.) An amended complaint was filed on October 5, 2020 and Defendants filed an answer reasserting the same counterclaims against Baral. (Docs. 10, 15.) On November 16, 2020, Baral requested leave to file a second amended complaint for the purpose of adding a declaratory judgment claim. (Doc. 20.) His request was granted, and the second amended complaint was filed on November 17, 2020. (Docs. 21, 23.) The declaratory judgment claim sought a judicial determination that the NCA is unenforceable due to a lack of consideration. (*Id.*) On December 2, 2020, Defendants filed another answer and again lodged counterclaims against Baral. (Doc. 24.)

Baral then filed a motion for a speedy hearing, pursuant to Federal Rule of Civil Procedure 57, requesting a prompt hearing and expedited adjudication of the

declaratory judgment claim. (Doc. 28.) After concluding that a hearing was not necessary, the court construed the motion as a request to file an early motion for summary judgment as to the declaratory judgment claim.[2] (Doc. 39, p. 4.) The court ordered expedited factual discovery on the declaratory judgment claim and instructed Baral to file a motion for partial summary judgment on that claim. (*Id.* at 6.)

Thereafter, Baral's motion for partial summary judgment, brief in support, and statement of facts, were filed on June 30, 2021. (Docs. 56, 57, 58.) Defendants filed their brief in opposition and answer to statement of facts on July 17, 2021, and Baral timely filed a reply brief. (Docs. 60, 61, 62.) Thus, this motion is ripe for review.

## JURISDICTION AND VENUE

Because this case raises a federal question pursuant to the Fair Labor Standards Act under 29 U.S.C. § 216(b), the court has original jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, the court has supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367. Further, venue is appropriate under 28 U.S.C. § 1391.

[2] At the time this order was entered, this case was assigned to Judge John E. Jones, III. The case was reassigned to the undersigned on August 2, 2021.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving

party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Further, the non-moving party cannot rely on "general denials or vague statements." *Shaeffer v. Schamp*, No. 06-1516, 2008 WL 2553474, at *4 (W.D. Pa. June 25, 2008) (quoting *Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992)). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## DISCUSSION

Baral moves for judgment in his favor on the declaratory judgment claim, arguing that the NCA is not enforceable. (Doc. 57, pp. 6–11.) Arguing on the basis of Pennsylvania law, Baral argues that he is entitled to summary judgment

because INHC never gave him a raise or any other new, valuable consideration when he signed the NCA. (*Id.*) Defendants contend that Baral is not entitled to summary judgment because, in accordance with the NCA, INHC gave Baral access to confidential information in order to work as a Case/Marketing Manager and that is sufficient consideration. (Doc. 61, pp. 5–10.) In making this argument, Defendants rely heavily on case law from other jurisdictions in which courts have held that access to confidential information constitutes valid consideration for a mid-employment non-compete agreement. (*Id.*, pp. 6–9.)

The declaratory judgment claim, which revolves around the enforceability of the NCA, sounds in Pennsylvania contract law[3] and our review must begin with a review of Pennsylvania's treatment of restrictive covenants in employment agreements. "Pennsylvania courts have historically viewed [restrictive] covenants as contracts in restraint of trade that prevent a former employee from earning a livelihood, and, therefore, have disfavored such provisions in the law." *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1273–74 (Pa. 2015). Although disfavored, Pennsylvania law "has recognized the validity and enforceability of covenants not to compete in an employment agreement, assuming adherence to certain requirements." *Id.* at 1274. One of these requirements is that the restrictive

[3] Furthermore, the language of the agreement itself requires that it be "construed in accordance with and governed by the laws of Pennsylvania." (Doc. 23-1, p. 5.)

covenant be supported by adequate consideration. *Id.* Consideration is crucial, regardless of whether the agreement was entered into prior to, during, or after the employment ends. *Cap. Bakers Inc. v. Townsend*, 231 A.2d 292, 293–94 (Pa. 1967). When the agreement is entered into during an employee's employment,

> it is enforceable only if the employee receives "new" and valuable consideration—that is, some corresponding benefit or a favorable change in employment status. Sufficient new and valuable consideration has been found by our courts to include, *inter alia*, a promotion, a change from part-time to full-time employment, or even a change to a compensation package of bonuses, insurance benefits, and severance benefits. Without new and valuable consideration, a restrictive covenant is unenforceable.

*Socko*, 126 A.3d at 1275.

The court finds no evidence showing that INHC gave Baral any new and valuable consideration in exchange for signing the NCA. Pennsylvania law on new and valuable consideration is clear – consideration in this context can come in many forms, but it must constitute a corresponding benefit or a favorable change in employment status. *Socko*, 126 A.3d at 1275. Further, both parties agree that Pennsylvania law has never identified access to confidential information as sufficient consideration.[4] (Doc. 61, p. 9–10, n. 2; Doc. 62, p. 1.) Given Pennsylvania's history of disfavoring non-compete agreements in general and the

[4] Citing cases applying Texas, Montana, and North Carolina law rather than Pennsylvania law, Defendants submit that access to confidential information is sufficient consideration to render the NCA enforceable. (Doc. 61, pp. 6–9.) The court will not apply the law of other states to override clear Pennsylvania law on this issue.

lack of any authority supporting the contention that access to confidential information is a valid form of consideration in this context under Pennsylvania law, the court concludes that access to confidential information does not constitute sufficient consideration for a mid-employment NCA.

However, even if the court found that access to confidential information constituted sufficient consideration in this case, Baral would still be entitled to summary judgment on the declaratory judgment claim. That is because nothing in the parties' submissions demonstrates *when* Baral was given access to this confidential information. Courts have consistently held that in addition to the necessity of consideration being provided, the timing of the consideration is important. The court in *Socko v. Mid-Atlantic Systems of CPA, Inc.* held that an employment agreement containing a non-compete clause may be unenforceable for lack of consideration "where the employer provided the employee with no benefit or change in employment status *at the time of the execution*." 126 A.3d at 1270 (emphasis added); *see also, e.g.*, *Recs. Ctr., Inc. v. Comprehensive Mgmt., Inc.*, 525 A.2d 433, 435 (Pa. Super. Ct. 1987) (holding that "the [restrictive] covenant must be executed contemporaneously with the exchange of consideration"); *WMI Group, Inc. v. Fox*, 109 A.2d 740, 749 (Pa. Super. Ct. 2015) (same); *Cap. Bakers, Inc.*, 231 A.2d at 293–94 (finding that a supplemental employment agreement containing a restrictive covenant was not enforceable because the employee

executed it during his employment without a contemporaneous exchange of consideration).

In this case, the court finds no evidence in the record establishing the date when Baral was given access to the confidential information. During discovery, a request for admission was provided to Baral asking him to confirm the following: "As a Case/Marketing manager, Baral had access to Intra-National's internal policies, handbooks, software, and consumer list." (Doc. 61-4, p. 6.) Baral admitted that this was true and noted that all of INHC's employees at the Lancaster office had access to this information and shared the same login information. (*Id.*) Defendants use this one admission to argue that there was sufficient consideration for the NCA in this case. The court disagrees. According to Defendants, Baral did not begin working as a Case/Marketing Manager until August 2019,[5] three months after Baral signed the NCA. Therefore, if the confidential information was provided to Baral in conjunction with the new position, it was not provided at the time the NCA was executed, and the NCA is void for lack of contemporaneous

[5] While there is a factual dispute surrounding when Baral began working as a Case/Marketing Manager, with Baral claiming he began working in that position in November 2018 and Defendants claiming that he did not begin working in that position until August 2019, neither of those dates line up with the signing of the NCA. (Doc. 58, ¶¶ 8, 13; Doc. 60, ¶¶ 8, 13.) Therefore, the factual dispute is not material because whether he started working as a Case/Marketing Manager in November 2018 or August 2019, he did not begin working in that position in May 2019, when the NCA was signed. Thus, this promotion or additional access to confidential information could not have served as new and contemporaneous consideration.

consideration. Accordingly, summary judgment will be granted in favor of Baral on the declaratory judgment claim at Count 4 of the second amended complaint.

## CONCLUSION

For the reasons stated herein, the court will grant Baral's motion for partial summary judgment on Count 4. (Doc. 56.) An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: November 4, 2021